Greg Kinski on behalf of defendant appellant Sean Malmquist. We made two arguments. One was the asking for review to NOVO under Rule 51 and the other one is for plain error under Rule 52. I recognize the Rule 52 plain error argument is the stronger one, although it remains our enough. Well, I understand, and the government can confirm this, that it concedes that there was a breach of the plea agreement. Correct. I believe under plain error, the government concedes the first two prongs of Puckett that there was a... So it would come down to prong three. Prong three. Yes. Whether or not there was a substantial likelihood. Substantial effect on his substantial rights. Substantial effect. Correct. Thanks for the correction. He got more prison time. He did get more. But the issue is, the Supreme Court defines it as, can we... Your relief is not saying a district judge would have to, if you prevail, actually give him the acceptance of responsibility, right? No. That's the court's discretion. But my argument, unless I misunderstood the court, is that the government breached the clear and plain. We're past that. We'll hear if the government wants to disagree, but we're asking on both prongs, what are your best arguments? One might say that there isn't prejudice under the third prong because someone who lives a life of crime, who repeatedly does meth, is going to not get acceptance of responsibility regardless. In fact, that bleeds into the fourth prong, which is, it would be a miscarriage to order that he get acceptance of responsibility. Right. Under Kirkland, for example, the breach is, does affect, does meet the fourth prong. And that would be the, substantially, the integrity of the court. So... Kirkland is your strongest authority. They're saying they question whether it's valid law, plus they're, the government argued more passionately and more aggressively. I think those are distinctions without a difference. Kirkland is clearly precedent and clearly controls. Just because they don't like it doesn't mean it doesn't apply. Just because the government argued in strong terms regarding the violations that Kirkland had committed does not mean that the fourth element has not been met in this instance. Let me ask you this. I'll just tell you my concern about this is that, as I read the sentencing transcript, the district court said, okay, the range, the sentencing range that did not take into account the acceptance of responsibility, so the higher range. Right. I forget what exactly that was. I didn't... Yeah, that's okay. It's a higher range. The district court says, look, I think that's too high. Right. So he varies downward or departs downward, whatever he did, and goes right smack in the range that your client would have gotten had he gotten the acceptance of responsibility. Isn't that right? I don't believe that is correct. There is a sort of Venn diagram in between the two different ranges, but the... And the court did the downward adjustment because the court wanted to be consistent with the prior hearings. Yeah. The court did state that now that we're not having acceptance of responsibility, the result is too harsh in this instance. Right. Not that we wouldn't give it, and it's not in the middle, it's in the upper range. It would have been, so the range that the court was operating under was 168 to 210. Correct. And he said, well, look, that's too harsh. Right. And he goes down to 151. Right. With a level 27, it would have been between 130 and 162. That's why I said that he kind of, well, maybe you're right. Not smack in the middle of 130 to 162, but somewhere in there. Yeah. My admittedly poor math is up to 34%. That's bad. Why I believe that's pertinent is the government also agreed to recommend the lower end of the guidelines. So 151 months is not the lower end of 130 to 160 months, it's the upper, 34%. If you prevail though, it'll go back to a new district judge, and that district judge has discretion not to depart downward, right? Correct. And not to give acceptance of responsibility. Correct. Your argument could end up being that your client spends more time in jail. It's a Dyson proposition, yes. And that's what I conceded, and it certainly went over with my client. It's like, you don't know what's going to happen. The failure of the defense counsel to object doesn't just put us in the plain error world, which is the big hurdle now for you, but it also means had there been an objection, I suppose we would know for sure if this defendant wanted to withdraw the guilty plea if they weren't going to get the benefit of the three points. Correct. They didn't have that opportunity. By virtue of being no objection, right? Thank you, Your Honor. In other words, the defense attorney, which wasn't you, saw PSR recommending no acceptance. Correct. Then gets in there, hears the government saying no acceptance, and never says, but wait, we were promised that. That is correct. And that gives us plain error view. There is no, and that's why I conceded. I guess the question, I should turn that into a question, why isn't this best looked at on habeas as to whether or not that defense counsel acted ineffectively? It was my assessment, and after consultation with others, that that was a higher burden. Yeah, it is a higher burden. As to whether or not, to me, the breach is clear. The government concedes a breach. The first two elements are met in a plain error. I mean, they rely primarily on Hinojosa, our case, and then Puckett. Do you want to speak to those quickly? Hinojosa, that was conditional on the acceptance of responsibility. There was no condition here. So, and I think they used the term highly unlikely that he would have received it, which is also similar to Puckett, where Fifth Circuit held and Supreme Court affirmed that the reasoning that it was highly unlikely that they would vary given these circumstances. So, the third element was never met in that instance. The only, Puckett certainly is controlling, and it sets forth the four factors, but it's a guideline. It doesn't mean that Mr. Malmquist does not get resentencing in specific performance by the government. It just means he has to meet each of those four elements. And Puckett, of course, he violated after, in the three-year period in between the plea and the sentencing, is when he violated his conditions, committed new crimes. That's not this case. Williams, I believe, is also strong for us that the breach affected the fairness, integrity, and public reputation of judicial proceedings on the fourth element. And getting a little out of order, but I believe the government conflates, I believe the government concedes the first two elements and conflates the third and the fourth element. Remind me on the fourth prong. If the government concedes a breach, is there a presumption of miscarriage? I see there is under Williams. The government contests that. I think Williams says that there's a breach that affects fairness. That's because the government should be held to its agreements. I mean, the whole criminal justice system depends and relies upon pleas, whether they're in agreements or as an open plea in court. I mean, very few cases are going to get a trial. So absolutely, the breach affects the fairness, the integrity, and the reputation of judicial proceedings. As far as backtracking to the third element, there is reason to believe from the transcript that the result would have varied. The court echoed the prosecution's arguments that probation got it right, had you stayed in jail, we wouldn't be talking about acceptance of responsibility, and after you made the representations to the court, it was you who went back and breached it, which aligns with the government's argument that this is unfair, these three points. Those were all echoed by the court. So we believe that there's strong indication that the third element is met, that it substantially affected the outcome. On the de novo, the reason we didn't concede as far as we recognize that there's no objection in the transcript  but there are enough problems with the transcript that it gave me pause. At page 223 of the record, it shows the defense counsel objecting to acceptance of responsibility, which either he misspoke or it was not transcribed correctly. On page 228 of the record on appeal, when the court is talking, it is referred to as the clerk. In addition, if the purpose of Rule 51, the Contemporary Subjection Rule, is to bring to the court's attention that there has been, in this instance, a breach and so the court has an opportunity to do something about it, I believe the main point of that, the rationale for that, should be, I think the focus should be on whether the court is aware of it. And in this instance, at page 241, it said it carefully reviewed the plea agreement. At page 248, it referenced the plea agreement again, pursuant to the terms of the plea agreement, which is right to appeal. And not to wrap too much in this argument, but those instances on the record is why we didn't concede that the review should not be developed. I would give you an opportunity to respond to two footnotes in the government's brief. In footnote two, the government says that we should dismiss reference to assurances that were given outside of the plea agreement. Did you make any sense of that? I don't understand that. Yeah, I'm going to miss that one. Maybe, is there anything in the record to say that after the PSR came out, your client asked for reassurance that the government would show up and recommend the three points and then there were emails? No. What are the assurances that you referred to that they said we should dismiss? What assurances? Do you know? Do you remember the footnote? I don't. Maybe when you get back. I have to find that footnote. Okay. The other footnote was that, pointed out footnote four, that your client was warned before the guilty plea that misconduct could affect ultimately the three points. Definitely. Right. Definitely. I mean, but that all references pre-plea conduct. So then the government contracted out of that. Correct. The government knew. If the government didn't know, they should have known, which I believe is the standard, but clearly they knew of the breach and yet they entered into the agreement. They didn't make a conditional. They didn't say, you know, based on your prior conduct. There was not a second agreement that if we don't comply, then you have to go forward. You agree that you have to go forward and make the showing. There's no such agreement. It's only the plea agreement that's before the court. Okay. You have rebuttal time? Yes. Thank you. Thank you. Mr. Richter. May it please the court. Zachary Richter for the United States. Judge Duncan set this up correctly. We're talking about the third and fourth prongs of plain error here. Okay. Does the brief explicitly say this was a breach? No, it doesn't. Are you prepared to say that now? So this attorney breached a plea agreement. That's correct. And it was a clear error. It was a clear error. Does the record reflect if he's reported himself to PREO? The record doesn't reflect that, Your Honor. But everything about the record reflects that this was an inadvertent mistake. Well, no, I'm not sure I can accept that. Because inadvertency happens when a different AUSA shows up at sentencing. This was the same assistant U.S. attorney. Firstly, whether it's inadvertent or not is not the standard under pocket under the third and fourth prongs. Have you argued that he forgot anywhere in the brief? Does the record reflect that he walked in and just forgot? The record doesn't say one thing or another about the motivation, and that's because there was no objection raised, so there was no chance to make a record on this topic. But what the record does reflect is that this was a 33-defendant case with multiple defendants being sentenced on this day. So your suggestion to us is he just forgot the deal that had induced the defendant to plead guilty? I have to push back on the presumption of your question, which is that this deal induced the defendant to plead guilty. The defendant had every reason to believe that the government's would not have made a difference in this case. No, but, I mean, I have no patience for the fourth prong. You can talk me out of it. But the entire criminal justice system is built on guilty pleas. Every little point they negotiate for, they want. Three points coming from the government about remorse, contriteness, is going to be extremely impactful. Well, I think that a defendant who goes into sentencing, having received multiple warnings from the magistrate judge that his conduct on pretrial release will make a difference in his sentence, is on notice that the government's recommendation in one way or another on acceptance is maybe not going to make a big difference. Maybe not going to make a big difference. But here, it isn't just that there might have been support for any district judge, if there is one still following, to deny it. The issue is, if the government had come in and said, Your Honor, we recommend he get all three, would that have affected this sentencing judge? No. And I want to come back to your question about the fourth prong, but to answer that question first, if you look at page 242 through 244 of the record, the district court explained exactly why it chose this sentence. Number one, it was trying to find a compromise situation between the result that would happen if the sentencing range that would apply without acceptance responsibility, if that were applied to the defendant, that would have led to much longer sentences, Judge Duncan was pointing out. The district judge said, I think that's too harsh of a penalty, and I want to go down within the range that would apply with acceptance of responsibility. The district judge also noted that he was trying to align this defendant's sentence with other defendant's sentences. And in fact, if you look at the docket, this is the fourth defendant in this 33-defendant case to have received a 151-month sentence. But the question on the third prong is, would he have gotten the benefit that the breach led to? Would he have gotten the three points? And the district court didn't say, I'm not going to give you that before the government allocated. The district court waited for the government who passionately said he doesn't deserve it. So that was the opposite of what he said to induce the fellow to plead. But am I right? The district court said, correct. When it said you don't get those points, the district court said correct, referring to what the government had just said to him. I don't read the record that way. Did he say correct? I don't remember that exact page of the record in that one word. Well, that would be a significant word. That would suggest that what the government had said had influence. What the district court endorsed about what the government said was that if Mr. Malmquist had not been released pre-trial, then he would have had a much harder time violating conditions, which is self-evident. And we point that out in our brief. The government itself, well, I have difficulties with a great deal of this, but let me try to put it as a question to you. If the point is the court would have not given the three points, yet the court says the government, you're correct, the government is angrily arguing that he doesn't deserve it, saying that he has failed, right? He said this man failed while he was out. Do you recall that? I don't believe that that's a correct characterization of the record. Your characterization of angrily or passionately, I don't think you can tell that from a cold record, and I don't think it stands to reason. If you look at, for instance, past cases like the Hebron case in this court. No, on the facts of this case, the sentencing transcript, didn't he say, he, the AUSA, say to the court, he failed as in he betrayed your trust? He was echoing exactly what the pre-sentence report said, which is exactly what happened in the Hebron case that I'm trying to. Well, I'm asking you to stick to the facts here, because hadn't he in July successfully gone through the first round of drug treatment? Remember? I'm sorry, at what point? This defendant in July, he successfully passed some drug treatment, correct? I don't know exactly when that was, but the July I remember was the time that the defendant admitted that he had been caught with 50 grams of methamphetamine, and that his pre-trial release should be revoked. That's what happened in January, I believe, of 2022. Right, January. No, earlier. I'm sorry, July of 2022, going back to July. The first time that he was out on conditions, didn't he succeed? No, because after he finished the inpatient treatment and he went on outpatient treatment, he then used methamphetamine, lied about using methamphetamine, saying he was using a prescription drug. And then when he was caught out in that, was again caught using methamphetamine. So I don't think that you can characterize this as a defendant who is successful at any point in pre-trial release. And that's why the Supreme Court said in Puckett that it would be ludicrous in a situation like this where you have a defendant repeatedly violating before sentencing to say that the Fourth Prong is somehow violated. Puckett is the model here because both Kirkland and Williams... But in Puckett, the government wasn't aware of the misconduct before they still agreed, committed, to recommend three points. That didn't make a difference in the Supreme Court's analysis of the Fourth Prong. What the Supreme Court talked about was, does a defendant who is repeatedly violating the conditions of pre-trial release, by committing more crimes, in fact, the same crime he's going to be charged with, that that would be ludicrous. But you don't have to just look at Puckett. Look at this Court's decision in Herrera where this Court said that the Fourth Prong was not satisfied in a situation where the government knew about the violations before it entered the plea agreement, which is this situation again. I have difficulty ever saying there's no miscarriage as to the integrity of the system when an assistant U.S. attorney to induce a plea then violates it. Doesn't just stay silent, argues against what he said to the defendant. Here, get a plea and this is it. Well, take the Supreme Court's word for it on that because the Supreme Court said that the Fourth Prong is never automatically satisfied by a government's breach. Right, but that's what he concedes. He's willing to roll the dice. The miscarriage is the government has broken its promise. It's not that the sentencing court's going to for sure give it to him. No, that's wrong under Puckett, Your Honor, respectfully. Am I right or wrong that under Puckett the violative conduct occurred after the plea agreement? Is that correct or wrong factually? That's correct. That's the correct character. So here the assistant attorney was told of it, says you're going to get three points. Then he comes into the sentencing court and says everything he did means he can't get it. Is that a mischaracterization of the record? No, it's not, but under this court's decision in Herrera that point is not dispositive on the Fourth Prong. And Puckett tells us that what you just articulated, Your Honor, what I was reacting to when I said no before is that you can never say that just because the government breaches that the Fourth Prong is satisfied. Puckett flatly rejects that argument. But if you're unconvinced on the Fourth Prong, then look to the Third Prong because our argument is even stronger. If I could just, before you do that, because in an exchange earlier with Judge Higginson, I was confused about what the inquiry on the Third Prong actually is. I thought that the inquiry is from Kirkland. The breach does affect substantial rights, quote, unless the record indicates that the district court would have imposed the same sentence regardless of the government's breach, right? That's what we're asking. Not would he have received the points, but would he have gotten the same sentence, right? Right. The focus of the Third Prong is on whether there's a reasonable probability the defendant has to carry the burden of showing a reasonable probability of a different sentence but for the breach. And so in light of that, that's my question to your friend on the other side was here I understood the sentencing transcript to reflect that the district judge thought that the sentencing range that didn't take into account acceptance of responsibility reduction was too harsh. And so therefore he sentenced within the range that would have obtained if the acceptance of responsibility reduction had been given. That's what I understood the district court to be saying at the sentencing transcript. Now, is that wrong? What does that mean with respect to – I'm struggling with that. What does that mean with respect to Prong 3? So first, that's an accurate characterization of what the district court said. And with respect to Prong 3, what the district court statements are, what this court has to look to to decide whether there was a reasonable probability but for the breach. And so here the district court's comments all point to the district court adopting the logic of the pre-sentence report, which is, of course, already in front of the district court, and the district court looking to mediate the effect, kind of mediate these competing values between this defendant who has violated the conditions of pretrial release on the one hand and not feeling that sentencing within the range that would apply if this defendant was denied acceptance or denied acceptance, that would be too harsh, in other words. So then the district court went on, as I noted, to talking about aligning this defendant's sentence, which is, of course, one of the sentencing factors, which is of wedding disparities in sentences. So when you look at what the district court was saying, and it's important to realize when the district court is talking about the failures of the defendant, all of those would be before the district court no matter what, not only because of the pre-sentence report but because the government under this court's Casillas decision could tell the district court, he violated this many times in this many ways in this many severe ways. And the government could also, you know, did not have to make an enthusiastic recommendation for an acceptance responsibility under the Casillas decision. So the baseline here is a district court who is already well aware from the pre-sentence report and from what the government could say anyway without breaching that this defendant has repeatedly failed on pretrial release and has indeed committed new crimes, including being caught with 50 grams of methamphetamine after being caught taking methamphetamine twice. So when you look at... The report I was looking for, I found, the district court here said defendants usually get acceptance responsibility. But here the government, who had promised that it would recommend for it, so reinforcing whether they get it, did the opposite. The next thing the district court says, and I think the government is correct when it says that if this defendant had remained in jail, we wouldn't be talking about three points. That's the self-evident proposition that I was talking about before. But the government itself had decided he shouldn't remain in jail. They negotiated the plea after knowing his misconduct. They said he deserved the points. I don't think the government at any point said that he should not be in jail. I'm not sure if I understand that part of Your Honor's statement of the record because the government opposed release at every point and said that this defendant should not be on pretrial release. They were the ones that agreed that he gets acceptance in spite of everything that they later would say, well, darn, he should have stayed in jail, we wouldn't be talking about this. They had assessed the same amount of misconduct as misconduct that deserved three-point reduction. I don't know that that assessment actually ever occurred because the record doesn't reveal, again, because we don't have an objection. So we never got a chance to have the prosecutor say on the record, I'm sorry, I had forgotten this or I made this deal, the deal was already made and was waiting signature before I knew about this most recent misconduct. We don't know what the situation is because there wasn't an objection. So it would be a mistake to presume that there was some kind of nefarious misdealing going on. The deal was signed after? The deal was signed after. So they knew the misconduct. I'm just observing, Your Honor, that when the government, that there's nothing suggesting here that the government was trying to do something nefarious. And again, that's not the standard under Puckett. If this defendant wanted to say that the government was violating the plea agreement and that the district court should do something about it, the time to say that was in district court because at that point, the district court can address the breach. The district court can say to the government, I'm going to give you a chance to cure this. How did the government strike a deal and it did? The record doesn't include that information, Your Honor. And that's, again, the problem that we're facing. They didn't do it gratuitously, did they? I'm sorry, I didn't hear your question. They didn't strike a deal gratuitously. Why did they negotiate a deal? What were they negotiating for? We don't know why the government entered into this deal when it did. We don't know who loses. The defendant loses because he has... The earlier comment that we know that 90% of the federal prosecutions end in plea bargaining, we're talking about the basic jurisprudence in the federal system. And at the heart of that is plea bargaining, and at the heart of that is reliability of the government. So it's that backdrop that I look at your case. And if the government says that we make this recommendation and they don't do it, then it seems to me that you've got a hard rock to climb to wiggle out of that. You know, that's the reality of it. I appreciate that. And, Your Honor, I refer you to the... I'm disappointed the government would do that in plea bargaining. As a district judge, it would have been more than disappointment if the U.S. Attorney's ASU came in and did that. They never did. So to me, it's a very unusual situation. At least it was, and I hope it will remain an unusual situation. That informed my approach to the case and framing it for you, frankly. I appreciate that, Your Honor. And we regret what happened here. But if you look at the pocket decision, the pocket decision... In the pocket decision, the Supreme Court said, We understand that plea bargains are important and the government's credibility is important. Nevertheless, there is a countervailing consideration here, which is the contemporaneous objection rule. And when a defendant objects contemporaneously to breach in the district court, you can make a record. The government can try to cure the breach, if it's possible. Or the district court can offer a way to solve the problem in the district court, either by making clear on the record that... that the government's breach didn't make any difference, or by immediately getting another sentencing before a different district judge. You're talking about the fourth prong again. Am I right or am I wrong that Kirkland and Williams say that if you concede a breach, which you appropriately have, then there's a rebuttable presumption that the fourth prong has been met? They do say that. But Kirkland then goes on to say that the presumption is rebutted in a case like Puckett. And this is a case like Puckett, because the defendant repeatedly violated the condition to... No judge would have, or we just have to assume this judge had some sort of larger sentence in mind. Is that the argument here? Is it shifting to the third prong? Because I'm stuck on the word correct, because in my experience, judges, the one thing they listen to is the government's recommendation when it comes to acceptance of responsibility. That matters a lot. Did he cooperate? Was he remorseful? Is he contrite? The government knows that. And here the government didn't just stand silent. They came and did the opposite thing that they promised him they'd do. And all of that was also true in Hebron, Your Honor, in a published decision by this court. But this sentencing judge said the government's correct here right after the government said don't give it to him. And when you look at what the district court said right after that, it was talking about the government's statement that if Mr. Malmquist had never gone on pre-trial release, he would have had a much harder time violating. And that's not adopting some kind of contested point. It's adopting a self-evident proposition. Listen, there's no question that this is not where we want to be. But when we are here, we have to apply plain error. And Puckett tells us what to do with the plain error standard. And you can't just say that because there was a breach. That's what I was earlier suggesting to you, that what the dimensions of plain error are. And it directs us to the system as a whole, insulting the system as a whole, where you have 95% of the police going off and so held independent upon the integrity of the government and the representatives. That's a very good candidate for plain error. I disagree, Your Honor, because what Puckett tells us is that the contemporaneous objection rule is at least as important a consideration here. And if you decide that just because there was a breach in the case, that that means that you should reverse on the plain error standard, that means that you're going to erode the contemporaneous objection rule. You're going to make it easier for defendants to lie under the law. I'll re-read Puckett. I don't think it says there's an equivalency between the Rule 52 plain contemporaneous and government integrity, government sticking to its deals. In other words, I can easily see the government, the defendant walks into sentencing and he fully expects the assistant US attorney to back him up. He's going to look pretty stupid if he says, well, Your Honor, we admit to all these violations, but look, the government's with us. That's a sort of hopeless objection. I agree it would be better because we'd be on de novo. There would be no possibility of not even arguing for any. Well, the district court's on the call. You're suggesting that the defense attorney's decision not to draw attention to a very unusual government agreement somehow is equivalent to the government breaching the agreement? And that's in Puckett? There's an equivalency? No, I think we've gotten off track here. Well, you said equivalent, that the Supreme Court in Puckett, when I look at it again, said contemporary subjection is equivalent to the government standing to its word. That was your words, your description of Puckett. I see my time has expired. Yeah, of course. Go ahead and answer that. Yes. If I use the word equivalent, I apologize. That's not what I meant to say. What the Supreme Court said in Puckett was that these were competing values and that the plain error rule, especially in a plea case, has to account for those competing values. The balance that the court struck in Puckett is the balance that you have to apply here. And the idea that there's a presumption into the third prong that because it's a breach that it must have made a difference is rebutted here by the district court's comments at page 242 through 244 of the record. Thank you, Your Honor. Thank you, Counsel. Rebuttal? Hopefully just a few points. I did read the government's brief and I looked at the footnotes. Perhaps I don't understand the question, but I'm not sure that I need to address this. No, no. Why don't you address Puckett? Because the suggestion is that Puckett controls this. Well, Puckett sets forth the four prongs as far as plain error review, certainly. That's the law this court has to follow. But the difference between this case and Puckett is Puckett, they never reached the third element, the third prong. The court said to apply acceptance of responsibility in this instance is so rare as to be unknown. Conversely, the court in this case, after echoing the government's arguments against acceptance of responsibility, said at 229 of the record on appeal that defendants usually get acceptance of responsibility. The court did not say that we're denying acceptance of responsibility, but we're going to apply it. That's a connection that was never made. The court said, we're denying acceptance of responsibility. But when we look at all the other defendants and the sentences I've done in this case, and quite frankly, I forgot which conspiracy this was, that this is too harsh in this instance. And that's why the court decided to deviate down. They did not give acceptance of responsibility after denying it. What about holistically, that if we look at the entire sentencing discussion, this district court was going to put him where he was, whether it was because of the offense level calculations or acceptance of responsibility? We don't have that sort of level here in this case as we did in Puckett. I mean, we've referenced the three instances of violations of conditions. The first time around, the court found there was no probable cause. The second time around, there was no motion. The pretrial services made the court aware, but there was no motion. The third time was post-arrest. Was I right or wrong that in July of 2021, he actually successfully completed residential drug treatment, inconsistent with the government's statement to the sentencing court that he failed out of the program? That sounds correct. Sorry. Had he successfully completed a portion? That was my understanding. That was your understanding? That was my understanding. And I didn't focus on that to be able to recite it from the record. OK. But that is consistent with my recollection. As far as the extent of this conspiracy and the scourge of drugs and the effect on the community, et cetera, as the government mentioned, the problem with that is due process does not depend upon the consequences of a conspiracy. Due process does not depend upon the AUSA's memory as to whether or not, first, he shouldn't have opposed. First, he should have objected to not giving acceptance of responsibility. And second, that he agreed to move for a three-level downward adjustment of acceptance of responsibility. So in sum, we ask this court to vacate the sentence, to remand for specific performance by the government. That just means the government comes in and says, we think he should get it. He may not get it. I think the government is obligated on its specific performance to live up to its deal, to move for acceptance of responsibility, to move for acceptance of responsibility, There is a conditional 5k in there, but that's not before the court. But yes, the government, it should be ordered to specifically perform three-level downward adjustment motion recommendation of low end of the sentencing guidelines. Thank you, counsel. Thank you. All cases are submitted. We stand in recess. Thank you.